1
2
GUTRIDE SAFIER LLP
Seth A. Safier (State Bar No. 197427)
3
  seth@gutridesafier.com
Hayley A. Reynolds (State Bar No. 306427)
4
  hayley@gutridesafier.com
100 Pine Street, Suite 1250
5
San Francisco, California 94111
Telephone: (415) 789-6390
6
Facsimile:  (415) 449-6469
7
Attorneys for Plaintiffs

8              UNITED STATES DISTRICT COURT

9        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                  SAN JOSE DIVISION

| | |
|---|---|
| 11 EDWARD BREKHUS and | Case No. _____ |
| 12 JON HERNANDEZ, on behalf of themselves and those similarly | Class Action Complaint for Violation of the California Invasion of Privacy Act; |
| 13 situated, | Invasion of Privacy; Violation of the Consumer Legal Remedies Act; False |
| 14          Plaintiffs, | Advertising; Fraud, Deceit, and/or Misrepresentation; Unlawful, Unfair, |
| 15     v. | and Fraudulent Trade Practices; Violation of the California Consumer |
| 16 GOOGLE LLC; and ALPHABET INC. | Privacy Act; Breach of Contract; Intrusion Upon Seclusion; and Violation |
| 17          Defendants. | of the Federal Wiretap Act |
| 18 | Jury Trial Demanded |

19
20
21
22
23
24
25
26

Plaintiffs Edward Brekhus and Jon Hernandez bring this action on behalf of themselves and all others similarly situated against Google LLC and Alphabet, Inc. Plaintiffs' allegations against Google are based upon information and belief and upon investigation of Plaintiffs' counsel, except for allegations specifically pertaining to Plaintiffs, which are based upon Plaintiffs' personal knowledge.

**Introduction**

1.      Google markets and sells a popular line of voice-activated hardware device that enables consumers to get information regarding a range of topics, like the time, weather, status of traffic, and current news. Consumers can also use these devices to play music, to play alarms at particular times, and to control smart devices in their homes, like light bulbs, thermostats, and security systems. These devices, which include the Google Home, Google Home Hub, Google Home Mini, and Google Nest (collectively, "Google Home" or "Product"), utilize the Google Assistant platform, which enables the devices to engage in two-way conversations with listeners.

2.      The Google Home contains a sensitive microphone that can pick up sound throughout much of a user's home. To allay privacy concerns and increase sales of the device, Google has consistently represented to consumers that it will not record or process their conversations or other audio unless they use a specific activation phrase, such as "Hey Google" or "Ok Google." Google's representations left consumers with the impression that their conversations and other audio would not be recorded and/or sent to Google without their authorization.

3.      As described in more detail below, Google's representations were false. Google, in fact, configured the Google Home to record, retrieve, and process

audio throughout users' homes—even when users did not do anything to activate it.

## Parties

4.     Plaintiff Edward Brekhus is, and was at all relevant times, an individual and resident of California. Mr. Brekhus currently resides in Novato, California.

5.     Plaintiff Jon Hernandez is, and was at all relevant times, an individual and resident of California. Mr. Hernandez currently resides in Long Beach, California.

6.     Defendant Google LLC is a Delaware limited liability company with its principal place of business in Mountain View, California. Defendant Alphabet Inc., is a Delaware corporation with its principal place of business in Mountain View, California. (Google LLC and Alphabet Inc. are collectively referred to as "Google" or "Defendants.")[1]

## Jurisdiction and Venue

7.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. Section 1332(d)(2)(A) because: (i) there are 100 or more class members, and (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs.

8.     This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

---

[1] During the 2015 reorganization, certain of Google LLC's business segments were spun off and separated into independent entities under the ownership of Alphabet Inc. At various times during the Class Period, certain of the business segments re-merged with Google LLC under one corporate structure. Accordingly, Alphabet Inc. and Google LLC both have been named as defendants in order to ensure all corporate entities who may be found liable for any portion of the alleged wrongdoing are part of this lawsuit.

9.    The injuries, damages and/or harm upon which this action is based occurred or arose out of activities engaged in by Defendants within, affecting, and emanating from the State of California. Google regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products provided to persons in the State of California. Google has engaged, and continues to engage, in substantial and continuous business practices in the State of California. Moreover, Google's Terms of Service provides that: "California law will govern all disputes arising out of or relating to these terms, service specific additional terms, or any related services, regardless of conflict of laws rules. These disputes will be resolved exclusively in the federal or state courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in those courts."

10.    Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

11.    In accordance with California Civil Code Section 1780(d), Plaintiffs concurrently file herewith declarations establishing that they each purchased and used one or more Google Home devices in California. (*See* Exhibits A and B.)

12.    Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

**Substantive Allegations**

13.    The Google Home contains a sensitive microphone that can pick up sound throughout much of a user's home. After a consumer sets up the device, it perpetually listens and processes the audio inside the user's home. Google's service for processing Google Home audio is called the "Google Assistant."

14.    Although Google sells the Home devices, the larger benefit that Google receives occurs when consumers actually enable and use the devices in their homes. In particular, Google uses the data that consumers provide the Google Home device in order to supplement their already extensive dossier of user characteristics, activities, interactions, information and preferences.

15.    To get consumers to use the Google Home—thereby reaping the benefit of their data—Google has run promotions offering free Google Home devices to consumers who are paying subscribers of other Google services, at no additional cost. Professor Douglas Schmidt, who has studied Google's user data collection and retention policies, recently stated in *Wired* magazine that Google's "business model is to collect as much data about you as possible and cross-correlate it so they can try to link your online persona with your offline persona. This tracking is just absolutely essential to their business. 'Surveillance capitalism' is a perfect phrase for it." (*See* Lily Hay Newman, *The Privacy Battle to Save Google from Itself*, Wired (Nov. 1, 2018), https://www.wired.com/story/google-privacy-data/ (last accessed 8/6/20).)

16.    For obvious reasons, many consumers are uncomfortable having a device in their home that is always listening. To allay those concerns and encourage consumers to use the devices, Google represents to (and promises) consumers through multiple channels—including the device packaging, support channels, advertising, and Google's YouTube video service—that audio data will not be recorded, saved or sent to Google unless the consumer uses a predetermined activation phrase like "Ok Google" or "Hey Google."

17.    The Google Home packaging itself states that users are to activate the device by saying "Ok Google":

18.    Further, Google makes the following statement on their privacy page for Google Assistant devices (like the Google Home):

> The Google Assistant is designed to wait in standby mode until it is activated, like when you say "Hey Google." The Assistant starts in standby mode, waiting to be activated. In standby mode, it processes short snippets of audio (a few seconds) to detect an activation (such as "Ok Google"). If no activation is detected, then those audio snippets won't be sent or saved to Google. When an activation is detected, the Assistant comes out of standby mode to fulfill your request.

(https://support.google.com/googlenest/answer/7072285?hl=en (last accessed 8/6/20).)

19.    Likewise, Google created a number of videos regarding how to activate the Google Home, including video in January 7, 2020, entitled "Privacy On Google Assistant." The voiceover of the video states:

> The Google Assistant is built to keep your information private, safe, and secure. This is a speaker with a Google Assistant. It's built to wait in standby mode until it is activated, like when you say "Hey Google." And when it's in standby mode, Assistant won't send what you were saying, to Google or anyone else.

(https://www.youtube.com/watch?v=ZaqZcDOoi-8 (last accessed 8/6/20).)

20.    Google tries to make consumers think that **they** control when the

1   Google Home is activated. For example, in response to the frequently asked

2   question, "What are some types of activation methods," Google reassures

3   consumers that "*You* can activate your assistant in many ways."

4   (https://support.google.com/googlenest/answer/7072285?hl=en (last accessed

5   8/6/20).) Similarly, the Google privacy video referred to above states:

6   "Occasionally, the assistant may activate when *you* didn't intend it to, because it

7   incorrectly detected that *you* wanted its help. We have a number of protections

8   designed to prevent this from occurring." (https://www.youtube.com/watch?

9   v=ZaqZcDOoi-8 (last accessed August 6, 2020)

10      21.    Similarly, on its privacy page, Google tells consumers that the Google

11  Home might activate when consumers do not intend it to, but only if it hears a

12  noise that sounds like "Hey, Google":

13
14  Can Google <mark>Assistant</mark> unintentionally collect my voice data?  What happens if it does and
    what are my choices?                                                                                    ⌃

15      Occasionally, the Assistant will activate when you didn't intend it to, because it incorrectly detected that
        you wanted its help (like by a noise that sounds like "Hey, Google").

16      If that happens, just say "Hey Google, that wasn't for you," and the Assistant will delete the last thing it
17      sent to Google. Learn about how to manage your audio recordings.

18  (https://support.google.com/googlenest/answer/7072285?hl=en (last accessed

19  8/6/20).) Google reassures consumers that this happens only "[o]n rare

20  occasions." *Id.*

21      22.    Google's online community forum also informs consumers that the

22  Google Home can accidentally activate "when it hears something similar to 'Hey

23  Google.'" Google informs users that they can guard against this by adjusting the

24  device's sensitivity:

25

26



**Google Employee**                                                 5/4/20   ⋮
Matt B - Google Assistant Community Manager

"Hey Google" sensitivity can now be configured    📌  🔒  0 Replies

Different factors, like how noisy an environment is, may affect Google Assistant's responsiveness to the hotword or cause it to accidentally activate when it hears something similar to "Hey Google."
To better tailor Google Assistant to your environment and desired responsiveness, we're rolling out a new feature that allows you to adjust how sensitive smart speakers and smart displays are to the hotword. You can make Google Assistant more sensitive if you want it to respond more often, or less sensitive to reduce unintentional activations.

You can now adjust how sensitive Google Assistant is in your settings through the Google Home app for smart speakers and smart displays. These settings can be changed at any time and you can fine tune your preferences for each device if, for example, one is in a busy area like the kitchen while the other is on the bedroom nightstand. This feature will be supported in English with more languages to follow.

(https://support.google.com/assistant/thread/44421919?hl=en (last accessed 8/6/20).)

23.     Despite its myriad efforts to persuade consumers that the Google Home guards their privacy, Google has never informed users that the Google Home can be activated, record and/or transmit everything in a user's home even when the user does not use the activation phrase, and even when there were no sounds in the house that sounded anything remotely like the activation phrase.

24.     Contrary to its representations (and promises) to consumers, and without giving consumers any notice, Google configured the Google Home to record audio from users' homes, and to transmit that data to Google for processing, all without any activation command being spoken.

25.     In approximately late July 2020, Google Home users began reporting that Google was sending them alerts about information that could have been obtained only by their Google Home devices surreptitiously recording audio without their consent. For example, one user on a Reddit forum stated that the user burned something in the kitchen, and then received a notification on the user's phone that Google had detected the smoke alarm going off. (*See*

https://www.reddit.com/r/googlehome/comments/i0v9bf/google_just_made_my_d

umb_smoke_detectors_smart/ (last accessed 8/6/2020).) The user posted the

following  screenshot of the phone notification:



(https://imgur.com/gallery/wjRUqmo (last accessed 8/6/20).)

26.     Another user on the same Reddit forum reported that the Google Home

had picked up the sound of breaking glass and had sent the user a notification of

that event. (*See* https://www.reddit.com/r/googlehome/comments/

i0v9bf/google_just_made_my_dumb_smoke_detectors_smart/ (last accessed

8/6/20).)

27.     After the issue was reported by various media outlets, Google admitted

to the online publication, *Protocol*, that the Google Home devices were listening

to users and transmitting the data to Google, even when they had not used the

activation command. (*See* https://www.protocol.com/google-smart-speaker-alarm-

adt (last accessed 8/6/20).) Google claimed that the incident was an accident that

occurred through a software update. (*Id.*) Google further claimed that the software

update was "rolled back." (*Id.*)

28.     Google, however, never informed users that its devices were surreptitiously recording the sounds in their homes and sending the recordings back to Google. Nor did Google identify when it started recording these sounds, what sounds were being recorded, or what exactly Google was doing with the audio. According to *Protocol*, Google also declined to state whether it has plans to engage in the same conduct in the future. (*Id.*)

29.     The *Protocol* article correctly observed that Google's behavior is a glaring privacy concern, especially given Google's failure to inform consumers that sounds other than "Hey Google" could activate the recording:

> On the one hand, there is some potential for a privacy backlash. Google has long told users that its speakers only actively monitor ambient audio for utterances of the "Hey Google" wake phrase. Any use of far-field microphones for other purposes, especially for users who didn't sign up for advanced monitoring, could result in some consumers rejecting the device category altogether.

(*Id.*)

30.     The surreptitious recording recently discovered by the Reddit user was not the first time Google had configured its Home devices to record users without the activation command being spoken. In October 2017, CNN Business revealed that an early version of the Google Home Mini uploaded everything that the user said. One journalist reported that the Google Home had made thousands of recordings of him in his home, without him ever using the activation command. See https://www.youtube.com/watch?v=H2ZgL3iAlLI (last accessed 8/6/20).)

**A. Plaintiffs' Experience**

**1.     Jon Hernandez**

31.     On or about December 11, 2018, Mr. Hernandez purchased a Google Home Mini device from a Best Buy store located in Long Beach, California.

32.   Before obtaining the device, Mr. Hernandez saw Google's representations that the device was to be activated by saying the phrase, "Ok Google" and/or "Hey Google." In particular, Mr. Hernandez saw the packaging indicating that the device is to be activated by saying the activation phrase, "Ok Google" and/or "Hey Google." He also had seen the representations on Google's website that the device would not transmit recordings to Google without the activation phrase.

33.   Based on his reasonable reliance on these representations, Mr. Hernandez purchased the device. Shortly after ordering the device, Mr. Hernandez set it up, and since that time has been using it in his home.

34.   Mr. Hernandez would not have purchased the Google Home device, nor would he have set it up or used it, had he known that any of Google's representations in Paragraph 32 above were false.

35.   Mr. Hernandez also has two other Google Home devices, which he received as gifts, in his home. He has been continuously using both of those devices for at least the last several months. He would not have set up those devices or used them, had he known that any of Google's representations in Paragraph 32 above were false.

36.   Mr. Hernandez is a reasonably diligent consumer. At no time prior to August 6, 2020, did Mr. Hernandez realize that Google had configured its Google Home devices to activate audio recording even when "Ok Google" or other spoken activation command was not used.

37.   At no time prior to August 6, 2020, did Mr. Hernandez realize that Google had configured its Google Home devices to send audio data back to Google even when "Ok Google" or other spoken activation command was not

1    used.

2       38.    At no time prior to August 6, 2020, did Mr. Hernandez realize that

3    Google was processing audio data from its Google Home devices, even when "Ok

4    Google" or other spoken activation command was not used.

5       39.    Had Mr. Hernandez realized that Google would enable the Google

6    Home devices to record, transmit, or process audio even when he did not use a

7    spoken activation command like "Ok Google" or "Hey Google," he would not

8    have purchased, set up, or used any of the devices.

9       40.    Had Google informed Mr. Hernandez, after he purchased and/or

10   received the Google Home devices, that Google would enable the devices to

11   record, transmit, or process audio even when he did not use a spoken activation

12   command like "Ok Google" or "Hey Google," he would have stopped using them

13   or, at the very least, would have taken measures to prevent them from hearing

14   unwanted audio (like unplugging or muting them at appropriate times).

15       **2.    Edward Brekhus**

16       41.    In October 2019, Mr. Brekhus saw that Spotify was running a

17   promotion whereby Spotify users could obtain a "free" Google Home Mini

18   device. But the device was not actually free; rather, it was made available only to

19   Spotify users with a paid subscription.

20       42.    Before obtaining the device, Mr. Brekhus was already familiar with

21   Google's representations that the device was to be activated by saying the phrase,

22   "Ok Google" and/or "Hey Google." In particular, Mr. Brekhus had already seen

23   the packaging indicating that the device is to be activated by saying the activation

24   phrase, "Ok Google" and/or "Hey Google." He also had seen the representations

25   on Google's website that the device would not transmit recordings to Google

26

without the activation phrase. Further, he saw representations from Spotify that the device would be activate by saying the activation phrase.

43.     Based on his reasonable reliance on these representations, Mr. Brekhus ordered the Google Home device. Shortly after ordering the device, Mr. Brekhus set it up, and since that time has been using it in his home, next to his bed.

44.     Mr. Brekhus would not have ordered the Google Home device, nor would he have set it up and used it, had he known that any of Google's representations set forth in Paragraph 42 above were false.

45.     Mr. Brekhus is a reasonably diligent consumer. At no time prior to August 6, 2020, did Mr. Brekhus realize that Google had configured its Google Home devices to activate audio recording even when "Ok Google" or other spoken activation command was not used.

46.     At no time prior to August 6, 2020, did Mr. Brekhus realize that Google had configured its Google Home devices to send audio data back to Google even when "Ok Google" or other spoken activation command was not used.

47.     At no time prior to August 6, 2020, did Mr. Brekhus realize that Google was processing audio data from its Google Home devices, even when "Ok Google" or other spoken activation command was not used.

48.     Had Mr. Brekhus realized that Google would enable the Google Home devices to record, transmit, or process audio even when he did not use a spoken activation command like "Ok Google" or "Hey Google," he would not have ordered, set up, or used the device.

49.     Had Google informed Mr. Brekhus, after he ordered the Google Home device, that it would enable the device to record, transmit, or process audio even

when he did not use a spoken activation command like "Ok Google" or "Hey Google," he would have stopped using it or, at the very least, would have taken measures to prevent it from hearing unwanted audio (like unplugging it or muting it at appropriate times).

### Class Allegations

50.   In addition to their individual claims, Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure and section 1781 of the California Civil Code.

51.   Plaintiffs bring this class action lawsuit on behalf of a proposed class of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, defined as follows:

> The Class: All natural persons who installed the Google Home devices in the United States during the time period of four years prior to the filing of this complaint through the present.

> The California Subclass: All Class Members who reside in the State of California.

52.   This action has been brought and may properly be maintained as a class action against Defendants because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

53.   Numerosity: Plaintiffs do not know the exact size of the Class, but they estimate it is composed of more than 5,000 persons. The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

54.   Common Questions Predominate:  This action involves common questions of law and fact to the potential classes because each class member's

claim derives from the same deceptive, unlawful and/or unfair statements and omissions. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. The questions of law and fact common to the Class including, but are not limited to, the following:

    a.  whether the packaging, marketing, advertising, and other promotional materials for the Product are deceptive and/or unlawful because of misrepresentations and omissions;

    b.  whether Defendants violated Plaintiffs' and Class Members' privacy rights;

    c.  whether Defendants' marketing, advertising, and other promotional materials for the Product was likely to deceive reasonable consumers;

    d.  whether Defendants' representations and omissions are material to reasonable consumers;

    e.  the amount of profits and revenues earned by Defendants as a result of its misconduct;

    f.  whether Class Members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

    g.  whether Class Members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

55.   Typicality: Plaintiffs' claims are typical of the claims of other members of the Class because, among other things, all such claims arise out of the same

1   wrongful course of conduct in which the Defendants engaged in violation of law

2   as described herein. Further, the damages of each member of the Class were

3   caused directly by Defendants' wrongful conduct in violation of the law as

4   alleged herein. Plaintiffs and the Class Members have suffered injury in fact as a

5   result of Defendants' false representations. Plaintiffs and the Class Members each

6   purchased and/or used the Product under the false belief that it had adequate

7   security measures in place and that Defendants would not misuse their personally

8   identifiable information ("PII"). Plaintiffs and the Class Members would not have

9   purchased and/or used the Product if they had known it did not have adequate

10  security measures in place and that Defendants misuse of personal user PII.

11      56.    Adequacy of Representation: Plaintiffs will fairly and adequately

12  protect the interests of all Class Members because it is in their best interests to

13  prosecute the claims alleged herein to obtain full compensation due to them for

14  the unfair and illegal conduct of which they complain. Plaintiffs also have no

15  interests that are in conflict with, or antagonistic to, the interests of class

16  members. Plaintiffs have retained highly competent and experienced class action

17  attorneys to represent their interests and those of the classes. By prevailing on

18  their own claims, Plaintiffs will establish Defendants' liability to all class

19  members. Plaintiffs and their counsel have the necessary financial resources to

20  adequately and vigorously litigate this class action, and Plaintiffs and counsel are

21  aware of their fiduciary responsibilities to the Class Members and are determined

22  to diligently discharge those duties by vigorously seeking the maximum possible

23  recovery for class members.

24      57.    Superiority: There is no plain, speedy, or adequate remedy other than

25  by maintenance of this class action. The prosecution of individual remedies by

26

members of the classes will tend to establish inconsistent standards of conduct for

Defendants and result in the impairment of class members' rights and the

disposition of their interests through actions to which they were not parties. Class

action treatment will permit a large number of similarly situated persons to

prosecute their common claims in a single forum simultaneously, efficiently, and

without the unnecessary duplication of effort and expense that numerous

individual actions would engender. Furthermore, as the damages suffered by each

individual member of the class may be relatively small, the expenses and burden

of individual litigation would make it difficult or impossible for individual

members of the class to redress the wrongs done to them, while an important

public interest will be served by addressing the matter as a class action.

58.     California Law Applies to the Entire Class. California's substantive

laws apply to every member of the Class, regardless of where in the United States

the Class member resides. Google's Terms of Service provides that "California

law will govern all disputes arising out of or relating to these terms, service

specific additional terms, or any related services, regardless of conflict of laws

rules. These disputes will be resolved exclusively in the federal or state courts of

Santa Clara County, California, USA, and you and Google consent to personal

jurisdiction in those courts." By choosing California law for the resolution of

disputes covered by its Terms of Service, Google concedes that it is appropriate

for this Court to apply California law to the instant dispute. Further, California's

substantive laws may be constitutionally applied to the claims of Plaintiffs and the

Class under the Due Process Clause, see U.S. CONST. amend. XIV, § 1, and the

Full Faith and Credit Clause, see U.S. CONST. art. IV, § 1, of the U.S.

Constitution. California has significant contact, or significant aggregation of

contacts, to the claims asserted by the Plaintiffs and all Class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair. Defendants' decision to reside in California and avail itself of California's laws, and to engage in the challenged conduct from and emanating out of California, renders the application of California law to the claims herein constitutionally permissible. The application of California laws to the Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiffs and the proposed Class, and California has a greatest interest in applying its laws here.

59.   Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

## PLAINTIFFS' FIRST CAUSE OF ACTION

**(Violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code §§ 631 and 632, *on behalf of Plaintiffs, the Class, and the California Subclass*)**

60.   Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

61.   The California Invasion of Privacy Act, codified at Cal. Penal Code §§ 630 to 638, includes the following statement of purpose:

> The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

62.   California Penal Code § 631(a) provides as follows:

Any person who, by means of any machine, instrument, or contrivance, or in any other manner . . . willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to lawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars . . . .

63.     California Penal Code § 632(a) provides as follows:

A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars….

64.     Under both § 631(a) and § 632(a) of the Privacy Act, a defendant must show that it had the consent of all parties to a communication.

65.     By enabling the Google Home devices to intercept and record audio and communications in users' homes without their consent, and by configuring the devices to send the audio data over the internet to Google, so that Google could analyze and read the contents of that audio, Google violated both § 631(a) and § 632(a) of the Privacy Act.

66.     The following items constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA, and even if they do not, Google's deliberate and purposeful scheme that facilitated its interceptions falls under the broad statutory catch-all category of "any other manner": (i) the software and firmware code of the Google Home devices used to record, read, and learn the contents and

meaning of audio communications inside users' homes; (ii) the Google servers, and software code installed on those servers, used to receive, parse, read, and learn the contents and meaning of audio communications recorded by the Google Home devices; and (iii) the plan Google carried out to effectuate its recording, interception, and analysis of Plaintiffs' audio communications, even though Plaintiffs had not consented.

67.    Plaintiffs and the Class members have suffered loss by reason of these violations, including, but not limited to, violation of their rights to privacy and loss of value in their PII.

68.    Pursuant to California Penal Code § 637.2, Plaintiffs and the Class members have been injured by the violations of California Penal Code §§ 631 and 632, and each seek damages for the greater of $5,000 or three times the amount of actual damages, as well as injunctive relief.

## PLAINTIFFS' SECOND CAUSE OF ACTION

### (Invasion of Privacy, *on behalf of Plaintiffs, the Class, and the California Subclass*)

69.    Plaintiffs reallege and incorporates the paragraphs of this Class Action Complaint as if set forth herein.

70.    California's constitution creates a right to privacy, and further creates a right of action against private entities such as Google.

71.    The principal purpose of this constitutional right is to protect against unnecessary information gathering, use, and dissemination by public and private entities, including Google.

72.    To plead a California constitutional privacy claim, a plaintiff must show an invasion of (i) a legally protected privacy interest; (ii) where the plaintiff

had a reasonable expectation of privacy in the circumstances; and (iii) conduct by the defendant constituting a serious invasion of privacy.

73.     Google has intruded upon the following legally protected privacy interests: (i) the California Wiretap Act as alleged above; (ii) the California Constitution, which guarantees Californians the right to privacy; (iii) a Fourth Amendment right to privacy, and (iv) Google's own Privacy Policy and policies referenced therein, which falsely promise users that the audio in their homes will not be recorded or transmitted to Google unless and until the user speaks an activation command like "Hey Google" or "Okay Google."

74.     Plaintiffs and those similarly situated had a reasonable expectation of privacy. Plaintiffs could not have reasonably expected that Google would commit acts in violation of federal and state civil and criminal laws, and Google affirmatively promised users that the audio in their homes would not be recorded or transmitted to Google unless and until the user uses an activation command like "Hey Google" or "Okay Google."

75.     Google's actions constituted a serious invasion of privacy in that it invaded a zone of privacy protected by the Fourth Amendment (i.e., one's home and personal communications therein), and violated federal and state criminal laws on wiretapping and invasion of privacy. These acts constitute an egregious breach of social norms that is highly offensive.

76.     Google's intentional intrusion into Plaintiffs' homes was also highly offensive to a reasonable person in that Google violated federal and state criminal and civil laws designed to protect individual privacy and against theft.

77.     Google lacked a legitimate business interest in enabling the Google Home devices to intercept, record, and transmit audio in consumers' homes without their consent.

78.     Plaintiffs and those similarly situated have been damaged by Google's invasion of their privacy and are entitled to just compensation and injunctive relief.

## PLAINTIFFS' THIRD CAUSE OF ACTION

**(Violation of the California Consumer Privacy Act
Cal. Civ. Code § 1789.100, et seq.,** *on behalf of Plaintiffs, the Class, and the California Subclass***)**

79.     Plaintiffs reallege and incorporate by reference all paragraphs alleged herein

80.     Defendants have violated California Civil Code Section 1798.100(b) of the California Consumer Privacy Act ("CCPA") by failing to inform Plaintiffs or those similarly situated that it would collect categories of personal data beyond those that Google had identified in its Privacy Policy as being subject to collection.

81.     Specifically, without being authorized to do so by its Privacy Policy, and without informing users, Google enabled the Google Home devices to collect personal user information as defined in Civil Code Section 1789.140, such as recordings of communications and activities inside users' homes, when users did not speak any activation command.

82.     Defendants have violated California Civil Code Section 1798.150(a). As a result of Defendants' inability to implement and maintain reasonable security procedures and practices, Plaintiffs and those similarly situated were

subjected to a scheme whereby Defendants gained unauthorized access to their private user information as alleged herein.

83.    Defendants have violated their duty to protect the personal information of Plaintiffs and the Class.

84.    Defendants' violation of their duty directly and proximately caused Plaintiffs and members of the Class to unwittingly expose their personal information to being recorded, collected, transmitted, and analyzed by Defendants, without authorization.

85.    Plaintiffs and members of the Class were injured through violations of legally protected privacy interests, in the form of unauthorized disclosure of personal user information.

86.    Defendants knew or should have known that they were violating the CCPA by changing the conditions under which it would take users' personal information. Defendants also failed to safeguard private user information and maintain reasonable security procedures.

87.    Defendants are a corporation and limited liability company that are organized and operated for the financial benefit of its owners.

88.    On behalf of the Class, Plaintiffs seek an order enjoining Defendants from continuing to violate the CCPA as alleged herein.

**PLAINTIFFS' FOURTH CAUSE OF ACTION**

**(Violation of the Consumer Legal Remedies Act (the "CLRA"), California Civil Code § 1750, *et seq., on behalf of Plaintiffs and the California Subclass*)**

89.    Plaintiffs reallege and incorporate the paragraphs of this Class Action Complaint as if set forth herein.

90.    Defendants' actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are

intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

91.    Plaintiffs and other Class Members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

92.    The Product that Plaintiffs (and other similarly situated Class Members) purchased or used from Defendants were "goods" within the meaning of California Civil Code § 1761(a).

93.    The practices described herein, specifically Defendants' acts and practices described herein were intended to result in the sale and use of the Product to and by the consuming public and have violated, and continue to violate, § 1770(a)(5), § 1770(a)(7), § 1770(a)(8), and § 1770(a)(9) of the CLRA. In violation of California Civil Code §1770(a)(5), Defendants' acts and practices constitute improper representations that the Google Home devices have approval, characteristics, uses and/or benefits that they do not have, (e.g., that the Product does not save and send information to Google without the predetermined activation words such as "Hey Google" or "Okay Google.") In violation of California Civil Code §1770(a)(7), Defendants' acts and practices constitute improper representations that Google Home devices are of a particular standard, quality, or grade, when they are of another. Finally, in violation of California Civil Code §1770(a)(9), Defendants have advertised the Google Home devices with intent not to sell them as advertised.

94.    Plaintiffs request that this Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendants are not restrained from engaging in these types of practices in the future, Plaintiffs and the other members

of the Class will continue to suffer harm. This is particularly true because, as reported by the publication *Protocol*, Google has declined to state whether it has plans to engage in the same conduct in the future (*see supra,* Paragraph 27).

95.     **CIVIL CODE § 1782 NOTICE.** Plaintiffs notice and demand that within thirty (30) days from that date of the filing of this Complaint, Defendants correct, repair, replace or otherwise rectify the unlawful, unfair, false and or deceptive practices complained of herein.

96.     Should the violations herein alleged not be corrected or rectified as required by Civil Code § 1782 within 30 days with respect to all Class Members, Plaintiffs will seek to amend this Class Action Complaint to seek, on behalf of each Class Member, actual damages of at least $1,000, punitive damages, an award of $5,000 for each Class Member who is a disabled person or senior citizen, and restitution of any ill-gotten gains due to Defendants' acts and practices.

97.     Plaintiffs also request that this Court award them costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

### **PLAINTIFFS' FIFTH CAUSE OF ACTION**

**(False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL"), *on behalf of Plaintiffs, the Class, and the California Subclass*)**

98.     Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

99.     Beginning at an exact date unknown to Plaintiffs, but within three (3) years preceding the filing of the Class Action Complaint, Defendants made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Product.

100.   Defendants made representations and statements (by omission and commission) that led reasonable customers to believe that the Product was configured to not record audio or send it to Defendants unless and until the user spoke the activation phrase (e.g., "Ok Google" or "Hey Google"). Defendants knowingly disseminated misleading claims that the Product adequately protects user information with secure privacy measures as a means to mislead the public for financial gain.

101.   Plaintiffs and those similarly situated relied to their detriment on Defendants' false, misleading and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth above. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, refraining from using or purchasing the Product.

102.   Defendants' acts and omissions are likely to deceive the general public.

103.   Defendants engaged in these false, misleading and deceptive advertising and marketing practices to increase their profits. Accordingly, Defendants have engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

104.   The aforementioned practices, which Defendants used, and continues to use, to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

105.   As a direct and proximate result of such actions, Plaintiffs and the other similarly situated Class Members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and

misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

106.   Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiffs, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon.

107.   Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

108.   Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction to prohibit Defendants from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they are not entitled. Plaintiffs, those similarly situated, and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**PLAINTIFFS' SIXTH CAUSE OF ACTION**

**(Common Law Fraud, Deceit and/or Misrepresentation, *on behalf of Plaintiffs, the Class, and the California Subclass*)**

109.   Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

110.   Defendants have fraudulently and deceptively informed Plaintiffs that the Product had adequate security measures in place and that Defendants would not misuse their personal information. Further, Defendants failed to disclose that users' private information could be shared with Defendants without the use of the spoken activation phrase.

111.   These misrepresentations and omissions were known exclusively to, and actively concealed by, Defendants, not reasonably known to Plaintiffs, and material at the time they were made. Defendants knew that users' private information would be shared with Defendants. Defendants' misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether to use and/or purchase the Product. In misleading Plaintiffs and not so informing Plaintiffs, Defendants breached their duty to them. Defendants also gained financially from, and as a result of, their breach.

112.   Plaintiffs and those similarly situated relied to their detriment on Defendants' misrepresentations and fraudulent omissions. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation: (i) declining to purchase or use the Product; (ii) purchasing or using the Product less frequently; (iii) using the Product differently (such as unplugging it or muting it at appropriate times); and/or (iv) paying less for the Product.

113.   By and through such fraud, deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically, Defendants fraudulently and deceptively induced Plaintiffs and those similarly situated to, without limitation, purchase and/or use the Product.

114.   Plaintiffs and those similarly situated justifiably and reasonably relied on Defendants' misrepresentations and omissions, and, accordingly, were damaged by Defendants.

115.   As a direct and proximate result of Defendants' misrepresentations and/or omissions, Plaintiffs and those similarly situated have suffered damages, including, without limitation, the amount they paid to obtain the Product.

116.   Defendants' conduct as described herein was wilful and malicious and was designed to maximize Defendants' profits even though Defendants knew that it would cause loss and harm to Plaintiffs and those similarly situated.

## PLAINTIFFS' SEVENTH CAUSE OF ACTION

### (Unlawful, unfair, and fraudulent trade practices violation of Business and Professions Code § 17200, *et seq., on behalf of Plaintiffs, the Class, and the California Subclass*)

117.   Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

118.   Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendants have engaged, and continues to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this complaint.

119.   In particular, Defendants have engaged, and continues to engage, in unlawful practices by, without limitation, violating the following state and federal

laws: (i) the CIPA as described herein; (ii) the CLRA as described herein; (iii) the FAL as described herein; (iv) the CCPA; and (v) Federal Wiretap Act, as described herein..

120.   In particular, Defendants have engaged, and continues to engage, in unfair and fraudulent practices by, without limitation, the following: (i) misrepresenting that the Product had adequate measures in place to protect users' privacy; (ii) misrepresenting that Defendants would not misuse their personal information; (iii) failing to disclose known security risks associated with using the Product; and (iv) failing to disclose that Google had enabled the Product to record audio and transmit it to Defendants even when consumers did not use the spoken activation phrase.

121.   Plaintiffs and those similarly situated relied to their detriment on Defendants' unlawful, unfair, and fraudulent business practices. Had Plaintiffs and those similarly situated been adequately informed and not deceived by Defendants, they would have acted differently by, declining to purchase and/or use the Product.

122.   Defendants' acts and omissions are likely to deceive the general public.

123.   Defendants engaged in these deceptive and unlawful practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

124.   The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

125.   As a direct and proximate result of such actions, Plaintiffs and the other class members, have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and the Class Members lost the amount they paid to obtain Product.

126.   As a direct and proximate result of such actions, Defendants have enjoyed, and continues to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

127.   Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiffs, the general public, or those similarly situated by means of the deceptive and/or unlawful trade practices complained of herein, plus interest thereon.

128.   Plaintiffs seek, on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

129.   Plaintiffs seek, on behalf of those similarly situated, an injunction to prohibit Defendants from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current

and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they were not entitled. Plaintiffs, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## PLAINTIFFS' EIGHTH CAUSE OF ACTION

**(Breach of Contract, *on behalf of Plaintiffs, the Class, and the California Subclass*)**

130.   Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

131.   Plaintiffs entered into contracts with Defendants by purchasing a Google Home. As part of this contract, each Plaintiff agreed to Defendants' Terms of Service ("TOS"). Plaintiffs have fully complied with their obligations under the TOS with regard to their use of Google's products and services.

132.   Plaintiffs and Defendants are subject to Google's Privacy Policy, which is incorporated into the contract through the TOS.

133.   Google's Privacy Policy states that "[t]he information Google collects, and how that information is used, depends on how you use our services and how you manage your privacy controls."

134.   Google breached the contract because it collected information that was not identified in their Privacy Policy, and also because it used that information in ways that were not authorized by the Privacy Policy. The breach was not due to Plaintiffs' management or mismanagement of their privacy controls, but rather by Defendants' own violative practices, without notice to or consent by Plaintiffs.

135.   As a result of Google's breach of contract, Plaintiffs and those similarly situated have suffered damages. Specifically, the value that Plaintiffs received

from purchasing and/or using the Product was less than Plaintiffs bargained for because Google diminished the value of the Products by enabling them to violate Plaintiffs' privacy. Plaintiffs and those similarly situated would not used or purchased—or would not have paid as high a price for—the Google Home Device if they had known that Google would breach their own TOS and Privacy Policy.

### PLAINTIFFS' NINTH CAUSE OF ACTION

**(Intrusion Upon Seclusion, *on behalf of Plaintiffs, the Class, and the California Subclass*)**

136.  Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

137.  To assert a claim for intrusion upon seclusion must plead (i) intrusion into a private place, conversation, or matter; (ii) in a manner highly offensive to a reasonable person.

138.  In carrying out their scheme to record and transmit the audio in Plaintiffs' homes even without an activation command being spoken, in violation of their own privacy promises, Google intentionally intruded upon the Plaintiffs' solitude or seclusion in that it effectively placed itself in the middle of conversations to which it was not an authorized party.

139.  Plaintiffs did not authorize Google to enable their Google Home Devices to record audio in their homes without the activation command being spoken.

140.  Google's intentional intrusion into Plaintiffs' was highly offensive to a reasonable person in that they violated federal and state criminal and civil laws designed to protect individual privacy and against theft.

141.   Google's surreptitious enabling of the Google Home Devices to record users' communications and other audio in their homes without their consent is highly offensive behavior.

142.   Public polling on internet tracking has consistently revealed that the overwhelming majority of Americans believe it is important or very important to be in control of who can get information about them; and to not be tracked without their consent. The desire to control one's information is only heightened when a person places a device like the Product in the home.

143.   Plaintiffs and the Class members have been damaged by Google's invasion of their privacy and are entitled to reasonable compensation including but not limited to disgorgement of profits related to the unlawful activities.

## PLAINTIFFS' TENTH CAUSE OF ACTION
**(Violation of the Federal Wiretap Act, 18 U.S.C. § 2510, ET. SEQ., *on behalf of Plaintiffs, the Class, and the California Subclass*)**

144.   Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

145.   The Federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986, prohibits the intentional interception of the contents any wire, oral, or electronic communication through the use of a device. 18 U.S.C. § 2511.

146.   The Wiretap Act protects both the sending and receipt of communications.

147.   18 U.S.C. § 2520(a) provides a private right of action to any person whose wire, oral or electronic communication is intercepted.

148.   Google's actions in intercepting and tracking user communications while they were at home, without an activation command being spoken, was

1   intentional. On information and belief, Google is aware that it is intercepting

2   communications in these circumstances and has taken no remedial action.

3   149.   Google's interception of communications that the Plaintiffs were

4   making while at home, without an activation command being spoken, was done

5   contemporaneously with the Plaintiffs' making those communications.

6   150.   On information and belief, the communications intercepted by Google

7   included "contents" of communications made from the Plaintiffs to other people

8   other than Google in the form of spoken words.

9   151.   On information and belief, the transmission of information between

10   Plaintiffs and other persons on which Google tracked and intercepted their

11   communications without authorization while they were at home, without an

12   activation command being spoken, were "transfer[s] of signs, signals, writing, . . .

13   data, [and] intelligence of [some] nature transmitted in whole or in part by a wire,

14   radio, electromagnetic, photoelectronic, or photooptical system that affects

15   interstate commerce[,]" and were therefore "electronic communications" within

16   the meaning of 18 U.S.C. § 2510(12).

17   152.   The following constitute "devices" within the meaning of 18 U.S.C. §

18   2510(5):

19       a.   communications made without an activation command being

20          spoken;

21       b.   The computer codes and programs used by Google to effectuate its

22          tracking and interception of the Plaintiffs' communications while

23          using a Google Home Product at home, without an activation

24          command being spoken; and

25

26

c.  The plan Google carried out to effectuate its tracking and

interception of the Plaintiffs' communications while Google Home

product, without an activation command being spoken,

153.  Google was not an authorized party to the communication because the

Plaintiffs were unaware of Google's recording or transmitting of the

communications to Google itself, did not knowingly send any communication to

Google, were communicating in their homes without an activation command

being spoken, Google intercepted the communications between the Plaintiffs and

persons other than Google. Google could not manufacture its own status as a party

to the Plaintiffs' communications with others by surreptitiously recording,

redirecting or intercepting those communications.

154.  As illustrated herein, "the" communications between the Plaintiffs and

other persons were simultaneous to, but separate from, the channel through which

Google acquired the contents of those communications.

155.  The Plaintiffs did not consent to Google's continued gathering of the

user's communications at home, without an activation command being spoken,

and thus never consented to Google's interception of their communications.

Indeed, Google represented to Plaintiffs and the public that information would not

be saved, recorded or transmitted unless an activation command was spoken.

Moreover, the communications intercepted by Google were plainly confidential,

which is evidenced by the fact that Plaintiffs were in their homes and were using

the Google Home products in a manner consistent with Google's own

recommendations to prevent the recording and sharing of information with

Google.

156.   After intercepting the communications knowing or having reason to know that such information was obtained through the interception of electronic and oral communications in violation of 18 U.S.C. § 2511(1)(a).

157.   As a result of the above actions and pursuant to 18 U.S.C. § 2520, the Court may assess statutory damages to Plaintiffs and the Class members; injunctive and declaratory relief; punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by Defendants in the future, and a reasonable attorney's fee and other litigation costs reasonably incurred.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and those similarly situated, respectfully request that the Court enter judgment against Defendants as follows:

A.   Certification of the proposed Class, including appointment of Plaintiffs' counsel as class counsel;

B.   An award of compensatory damages, including statutory damages where available, to Plaintiffs and the Class members against Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including both pre- and post-judgment interest thereon;[2]

C.   An order for full restitution;

D.   An order requiring Defendants to disgorge revenues and profits wrongfully obtained;

---

[2] Plaintiffs reserve from their prayer for relief any claim for actual or compensatory or punitive damages under cause of action number four (CLRA) and excluded the same from their cause of action number seven (UCL).

E.  An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

F.  For reasonable attorney's fees and the costs of suit incurred; and

G.  For such further relief as this Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: August 7, 2020                    **GUTRIDE SAFIER LLP**

_____
Seth A. Safier, Esq.
Hayley A. Reynolds, Esq.
100 Pine Street, Suite 1250
San Francisco, CA 94111

## EXHIBIT A

I, Edward Brekhus, declare:

1.     I am the Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.     I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3.     I reside in Novato, California. On or about October 23, 2019, I purchased the Google Home Mini device online, and have been using it at my home in Novato.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this 6 day of August 2020, in Novato, California.



Edward Brekhus

DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION

1    **<u>EXHIBIT B</u>**

2    I, Jon Hernandez, declare:

3    1.    I am the Plaintiff in this action. If called upon to testify, I could and would

4    competently testify to the matters contained herein based upon my personal knowledge.

5    2.    I submit this Declaration pursuant to California Code of Civil Procedure section

6    2215.5 and California Civil Code section 1780(d).

7    3.    I reside in Long Beach, California. I purchased a Google Home Mini device from

8    Best Buy in Signal Hill, California. I also received two Google Home Mini devices as gifts. I have

9    been using all three devices in my home in Long Beach.

10    I declare under penalty of perjury under the laws of California that the foregoing is true

11    and correct.

12    Executed this 6 day of August 2020, in Long Beach, California.

13

14

15    DocuSigned by:

      Jon Hernandez

      437580749773A5C...

16    Jon Hernandez

17

18

19

20

21

22

23

24

25

26

27

28

-1-

**D**ECLARATION **RE** **C**AL. **C**IV. **C**ODE **S**ECTION **1780(D) J**URISDICTION